UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:14-cv-24538-PAS

ROBERT BEZEAU, individually and on
behalf of other persons similarly situated,

    Plaintiff,

v.

CABLE EQUIPMENT SERVICES, INC., a
Minnesota corporation, CABLE EQUIPMENT
SERVICES, LLC, a Florida limited liability
company, CHARLES APPLEDOORN,
individually, and MARILYN APPLEDOORN,
individually,

    Defendants.
_____/

**RELENTLESS RECOVERY CORPORATION'S MOTION TO DISMISS THIRD PARTY CLAIM, AND INCORPORATED MEMORANDUM OF LAW**

Third Party Defendant, RELENTLESS RECOVERY CORPORATION ("RRC"), pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, respectfully move this Court to dismiss CABLE EQUIPMENT SERVICES, INC.'s ("CES"), CHARLES APPELDOORN and MARILYN APPELDOORN's Third Party Claim [D.E. 13] for failure to state a claim upon which relief can be granted. In support thereof, RRC states as follows:

**Factual Background**

In its Third Party Claim, CES alleges that Bezeau and Carcani, acting in their own names, and as RRC, provided cable equipment recovery services to CES pursuant to a written agreement. [D.E. 13] at p. 6, ¶¶ 5-6. CES alleges that Bezeau and Carcani were aware of a then-existing business relationship with Comcast. Pursuant to the Comcast contract, Comcast would pay CES for each cable television box that was delivered to Comcast from a disconnected

Comcast customer. CES in turn would pay Bezeau and Carcani on a piece rate basis for retrieving each cable television box on CES's behalf to be returned to Comcast. Id. at ¶ 5.

CES further alleges that Bezeau and Carcani grew dissatisfied with their business relationship with CES, and essentially sabotaged CES' performance of its contract with Comcast by improperly performing their cable box retrieval duties for CES, and providing CES' independent contractors with inaccurate information to conduct cable box retrievals. Id. at ¶ 7-9. Further, CES alleges that Bezeau and Carcani "falsely" told CES' other independent contractors that CES: (a) was in financial trouble; and (b) would not pay the contractors. Additionally, CES alleges that Carcani posted "disparaging" comments on social media sites that Mr. and Mrs. Appeldoorn (a) *might* face criminal charges; (b) *might* be investigated by the IRS; (c) would go bankrupt, and (d) would eventually become impoverished. Comcast grew displeased with CES' performance, and terminated its contract with CES citing CES' poor performance of its obligations under the contract as the reason for the termination. Id. at ¶¶ 9-10.

CES is attempting to state claims for tortious interference and defamation on these facts. However, established Florida law provides that *one*, no claim for tortious interference exists under these facts because RRC, Carcani and Bezeau were not third parties or "strangers" to the Comcast contract. Instead, they were financially interested in the proper performance of the Comcast contract. *Two*, CES has not pled sufficient facts to support an actionable defamation claim. The facts plead, at best (and without more), are statements of opinion. Accordingly, RRC requests that the Court dismiss the Third Party Claim.

**Memorandum of Law**

I.   **The Complaint Fails to Meet Minimum Pleading Standards.**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), failure to state a cause of action for which relief can be granted is grounds for dismissal.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). The alleged facts must be sufficient to enable the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Simpson v. Sanderson Farms, Inc., 744 F.3d 702, 708 (11th Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Ashcroft, 556 US at 677-78). Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations', it demands more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Id. citing Twombly, 550 U.S. at 555; Papasan v. Allain, 478 U.S. 265 (1986). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Twombly, 550 U.S. 555.  ***Nor does a complaint suffice if it "tenders naked assertion[s]" devoid of "further factual enhancement."*** Id. at 557 (emphasis added).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570.  ***The plausibility standard is not akin to a "probability requirement", but it asks for more than a sheer possibility that a defendant has acted unlawfully.***  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. (emphasis added),

at 555 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, ***but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions***. Id. (emphasis added). "Only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. at 556. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Ashcroft, 556 U.S. at 662. "***But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—that the pleader is entitled to relief***." Id. (emphasis added).

     Here, the Third Party Plaintiffs make no effort to specify the causes of action they are asserting. But for the assertions that RRC, Carcani and Bezeau "interfered" with CES' existing contracts and opportunities, there is no other way to determine that the Third Party Plaintiffs are asserting claims for tortious interference. Further, RRC, Carcani and Bezeau could not determine whether Third Party Plaintiffs were attempting to assert a defamation claim until it was mentioned in CES' response to Bezeau and Carcani's Motion to Dismiss Counterclaim [D.E. 36]. Although "notice" pleading may be acceptable in this Court, Third Party Plaintiffs are still required to meet minimum pleading standards. As outlined further below, Third Party Plaintiffs have only presented conclusory assertions, with virtually no underlying facts to support the claims they are attempting to assert. RRC, Carcani and Bezeau should not be forced to incur the additional costs of discovery without having pled sufficient facts to allow an assessment of whether these claims have merit.

## II.     CES Has Failed to State a Claim for Tortious Interference.

Under Florida law, a claim for tortious interference with a business relationship requires proof of: (1) a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship by the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship. Bortell v. White Mountains Ins. Group, Ltd., 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009); see also Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1127 (Fla. 1985) (to recover on a claim based on tortious interference with a business relationship, a plaintiff must establish (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, (2) knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with the relationship by the defendant, and (4) damage to the plaintiffs as a result of the breach of the relationship).

Third Party Plaintiffs have failed to allege sufficient facts to satisfy the third element of a claim for tortious interference.  For interference to be "unjustified", the interfering defendant must be a third party, or a "stranger" to the business relationship. Palm Bch. County Health Care Dist. v. Prof'l Med. Educ., Inc., 13 So.3d 1090 (Fla. 4th DCA 2009). *Under Florida law, a defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has* **a supervisory interest in how the relationship is conducted** or *a potential financial interest in how a contract is performed*. Id. at 1094 (emphasis added).

Florida's Fourth District Court of Appeal explained the rationale as follows:

> The cause of action for tortious interference with a business relationship recognizes that economic relations are entitled to freedom from unreasonable interference.  The point of a business relationship is to advance the interests of the parties involved. Tortious interference protects the interests of parties to an agreement against interference by outsiders, who would not be liable otherwise

>  for breach. In the case of an interested third-party, the contractual interests that tortious interference is intended to protect include the interests of the third-party with respect to the contract. **An interested third-party accused of tortious interference is essentially 'interfering' with its own interests. This is not interference; it is freedom of contract** (emphasis added).

RRC, Bezeau and Carcani also have a financial interest in the Comcast-CES contract by possessing a beneficial interest in the contract because "a defendant is not a stranger to a business or contractual relationship if the defendant has any **beneficial or economic interest in**, or control over, that relationship." Nimbus Technologies, Inc. v. Sunndata Prods., Inc., 484 F.3d 1305 (11th Cir. 2007). A beneficial interest is any profit, benefit, or advantage resulting from a contract, **or** the ownership of an estate as distinct from the legal ownership **or** control. Black's Law Dictionary.

    Here, Third Party Plaintiffs' allegations, as pled, demonstrate that RRC, Bezeau and Carcani are not strangers to the Comcast contract. Indeed, Third Party Plaintiffs alleged that Carcani and Bezeau, in their own name, and through RRC, provided cable recovery services on CES' behalf, for which CES paid RRC, Carcani and Bezeau based on compensation CES received from the Comcast contract. DE 13 at p. 5, ¶ 6. Therefore, RRC, Bezeau and Carcani were financially interested in the performance of the Comcast contract, as opposed to being third parties or "strangers" to the Comcast contract. Although RRC, Bezeau and Carcani were not parties to the Comcast-CES contract, they also possessed beneficial interests in the contract based on the financial benefits they would obtain by the contract remaining in effect. Having a beneficial interest, RRC, Bezeau and Carcani were not strangers to the CES-Comcast contract, and there is simply no way they could interfere with the contract, and therefore be held liable for tortious interference. This is clear from paragraph 6 of the Third Party Claim, and on that basis, the Court can appropriately dismiss the Third Party Claim.

Taking Third Party Plaintiffs' allegations as true, RRC, Carcani and Bezeau would be interfering with their own interests, to their own detriment, because they would no longer receive income from the Comcast contract.  Being an interested third party to the contract, RRC, Carcani and Bezeau cannot be held liable for tortious interference.  This prohibition holds true whether the contractual relationship between the Counterplaintiffs and Counterdefendants is based on employment (as contended by Counterdefendants), contractor/subcontractor (as contended by Counterplaintiffs) or a beneficial interest.

Even if CES contends that Carcani and Bezeau harbored malice or ill-will toward CES, Florida's Fourth District Court of Appeal explained in the Palm Bch. County Health Care Dist. case that such feelings would still not "transform" the case into one for tortious interference because "where one does an act which is legal in itself, and violates no right of another person, it is true that the fact that the act is done from malice or other bad motive towards another, does not give the latter a right of action against the former."  13 So.2d at 1095.  In this case, although CES alleges that Carcani and Bezeau made "disparaging" remarks about Defendants and provided inaccurate information to contractors regarding cable box retrieval, none of this alleged conduct was illegal, and even if done with malice, would not provide a basis for a tortious interference claim.

### III.    CES Has Failed to State a Claim for Defamation.[1]

The elements of a cause of action for defamation are: (a) the defendant published a false statement; (b) about the plaintiff; (c) to a third party and (d) that the falsity of the statement caused injury to the plaintiff.  Bass v. Rivera, 826 So.2d 534 (Fla. 2d DCA 2002); American

---

[1] RRC, Bezeau and Carcani incorporate the arguments in this section into Bezeau and Carcani's Motion to Dismiss Counterclaim [DE 35], by reference.

Airlines, Inc. v. Arthur Geddes, 960 So.2d 830 (Fla. 3d DCA 2007) ("to recover in a defamation action, a plaintiff must show that the defendant published false and defamatory statements concerning him, without reasonable care as to whether those statements were true or false, which resulted in actual damage to the plaintiff"). To determine whether a statement is actionable, the court must examine it in the context in which it was published. Fidelity Warranty Servs., Inc. v. Jim Moran & Assoc., Inc., 74 So.3d 506 (Fla. 4th DCA 2011). Pure opinion cannot constitute actionable defamation. From v. Tallahassee Democrat, Inc., 400 So. 2d 52, 57 (Fla. 1st DCA 1981). "A statement is pure opinion, as a matter of law, when it is based on facts which are otherwise known or available to the reader or listener." Razner, 837 So.2d at 442 (a statement that defendant thought plaintiff "was an alcoholic and needed to retire" was pure opinion).

"When bringing a cause of action based on oral statements, a plaintiff need not set out the defamatory language verbatim; *it is sufficient that the plaintiff set out the substance of the spoken words with sufficient particularity to enable the court to determine whether the publication*." Razner v. Wellington Regional Medical Center, Inc., et. al., 837 So.2d 437 (4th DCA 2002) (emphasis added). In this regard, Florida's Third District Court of Appeal explained that:

> *[t]he general rule in Florida is that allegedly defamatory words should be set out in the complaint for the purpose of fixing the character of the alleged libelous publication as being libel as per se.* That a plaintiff 'set out' allegedly defamatory words, does not necessarily require that the statements be set out verbatim. This is particularly true where the statements may not easily be retained because they were made orally either in conversation or by radio or television broadcast. . . . Accordingly, we hold that when the cause of action for defamation is based on oral statements, it is sufficient that the plaintiff set out the substance of the spoken words with sufficient particularity to enable the court to determine whether the publication was defamatory.

Lipsig v. Ramlawi, 760 So.2d 170 (Fla. 3d DCA) citing Edward L. Nezelek, Inc. v. Sunbeam Television Corp., 413 So. 2d 51, 55 (Fla. 3d DCA 1982).

Here, the statements on which Plaintiffs base their defamation claim are not stated with sufficient particularity to assess whether they can serve as the basis for a defamation claim. See Razner, Lipsig, Edward L. Nezelek, Inc., supra. Third Party Plaintiffs assert that Bezeau and Carcani "falsely" told independent contractors (presumably, verbally) that CES was "in financial trouble" and would not be able to pay the contractors. [D.E. 13] at ¶8. However, as these statements are pled, neither RRC, Bezeau, Carcani, and most important, the Court, can assess the nature or context of these statements. See Id. The allegations have no particularity with respect to context, and are merely conclusory "sound bites", which need a broader factual basis. As the statements are presently pled, they are simply opinions, which cannot underlie a defamation claim.

Further, Third Party Plaintiffs assert that Carcani posted disparaging comments on social media sites that Mr. and Ms. Appeldoorn *might* face criminal charges and be investigated by the IRS, and would go bankrupt and become impoverished. [D.E. 13] at ¶8. Based on the statements as pled, RRC, Bezeau and Carcani have not made specific statements of fact that Third Party Plaintiffs have engaged in any conduct that could be considered criminal activity. Instead, the statements are clearly speculative statements Third Party Plaintiffs *might* face criminal charges or *might* be investigated by the IRS.[2] At best, as pled, the statements RRC, Carcani and Bezeau allegedly made are conclusory statements of opinion, which do not give rise to defamation claims. See Twombly, supra. Similarly, any statements by RRC, Carcani and

---

2 Indeed, an audit by the IRS does not automatically lead to the conclusion that an individual or organization committed a criminal act.

Bezeau that Third Party Plaintiffs would go bankrupt or become impoverished are similarly statements of opinion, for which no factual basis has been pled.  Moreover, certain statements were allegedly made on social media sites, which means they were made in writing.  Third Party Plaintiffs, however, chose not to plead the statements verbatim (although allegedly available on the social media sites).  Having the statements verbatim, as well as the context in which they were pled will allow the Court to assess the nature of the statements and whether they can be the basis for a defamation claim.  See Razner, Lipsig, Edward L. Nezelek, Inc., supra.  As the statements are presently pled, they only present a "possibility" that RRC, Bezeau and Carcani acted unlawfully, which does not comport with proper pleading standards.  See Twombly, supra; Ashcroft, 556 U.S. at 662 ("…where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—that the pleader is entitled to relief").

## Conclusion

     Third Party Plaintiffs have failed to state claims for tortious interference or defamation.  Accordingly, the Third Party Complaint should be dismissed.

     WHEREFORE, RELENTLESS RECOVERY CORPORATION prays that this Court will enter an Order dismissing the Third Party Claim, and granting any other relief the Court deems just.

| | |
|---|---|
| Dated: April 30, 2015<br>Boca Raton, Florida | Respectfully Submitted,<br><br>**/S/ CAMAR R. JONES**<br>Camar R. Jones<br>Florida Bar No. 720291<br>E-mail: cjones@shavitzlaw.com<br>SHAVITZ LAW GROUP, P.A.<br>1515 South Federal Hwy, Suite 404<br>Boca Raton, Florida 33432<br>Telephone: 561-447-8888<br>Facsimile: 561-447-8831<br>Attorneys for Plaintiff |

## CERTIFICATE OF SERVICE

I hereby certify that on **April 30, 2015**, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

**/s/ CAMAR R. JONES**
CAMAR R. JONES

## SERVICE LIST
*Bezeau v. Cable Equipment Services, Inc. et al*
*CASE NO.: 1:14-cv-24538*
*United States District Court for the Southern District of Florida*

James C. Cunningham, Jr.
Email: jcunningham@bergersingerman.com
Leonard K. Samuels
Email: lsamuels@bergersingerman.com
BERGER SINGERMAN, LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Tel: (305) 755-9500
Fax: (305) 714-4340

Ansis V. Viksnins
Email: aviksnins@lindquist.com
Carrie Ryan Galia
Email: cryangallia@lindquist.com
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 371-3211
Fax: (612) 371-3207

*Attorneys for Defendant*

**Served via CM/ECF**