UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.   14-24538-CIV-SEITZ/TURNOFF

ROBERT BEZEAU, ET AL.,

     Plaintiffz,

v.

CABLE EQUIPMENT SERVICES, INC., ET AL.,

     Defendants.
_____/

## ORDER GRANTING IN PART MOTION TO DISMISS COUNTERCLAIM AND MOTION TO DISMISS THIRD-PARTY CLAIMS

  THIS MATTER is before the Court on two motions.  The first is Plaintiffs Robert Bezeau and Rudiana Carcani's Motion to Dismiss Defendant Cable Equipment Services, Inc.'s (CES) Counterclaim [DE-35] for tortious interference with CES's contract with Comcast.  The second is Third-Party Defendant, Relentless Recovery Corporation's Motion to Dismiss CES's Third-Party Claim [DE-51] for tortious interference with the Comcast contract and defamation.  In their motions, Plaintiffs and Relentless Recovery Corporation (RRC) assert that they could not tortiously interfere with CES's Comcast contract or business relationship because they were not third-parties or strangers to the contract or relationship.  In its response to Plaintiffs' motion, CES argues that Plaintiffs are strangers to the contract and CES notes that Plaintiffs have not responded to CES's claim for business defamation.  RRC moved to dismiss the defamation claim only because CES raised it in the response to Plaintiffs' motion.  Although Plaintiffs' and RRC's assertions that they are not strangers to the contract fail, the motions to dismiss are granted with leave to replead because it is not clear from the face of the counterclaim what claims CES is actually alleging.

## I.    Facts Alleged in the Counterclaim

Plaintiffs' complaint seeks unpaid overtime pursuant to the Fair Labor Standards Act.  In response, CES filed its Answer, Affirmative Defenses, and Counterclaim and Third-Party Complaint [DE-13].

In the counterclaim, CES alleges that it provides cable equipment recovery services to cable companies.  For years, CES and Comcast had a business relationship and contracts for CES to recover Comcast cable television boxes and other equipment from disconnected Comcast customers.  Plaintiffs are the owners and operators of third-party defendant RRC.  CES entered into independent contractor agreements with Plaintiffs and RRC to provide cable equipment recovery services to CES.  Plaintiffs were paid on a piece basis for each cable box collected and returned.  Comcast would pay CES for each cable box that was delivered to Comcast and in turn CES would pay its independent contractors, including Plaintiffs and RRC.

In 2014, Plaintiffs grew dissatisfied with their relationship with CES.  Plaintiffs wanted to expand their territory but CES declined.  Plaintiffs also wanted more per box, which CES also declined.  As a result, Plaintiffs began to cause trouble for CES by: (1) encouraging other independent contractors who worked for CES to take the position that they should be paid like employees; (2) falsely telling other CES independent contractors that CES was in financial trouble; (3) posting disparaging comments on social media sites that the owners/managers of CES might face criminal charges, might be investigated by the IRS, would go bankrupt, and would eventually become impoverished; and (4) providing incorrect information to other independent contractors causing them to collect the wrong cable equipment.

On October 14, 2014, Comcast terminated its Agreement with CES.  Comcast stated that

the reason for termination was the number of unauthorized pick-ups.  As a result, CES lost a

valuable contract and business opportunity with Comcast and no longer has any active business

in Florida.  CES alleges these actions constitute a tortious, intentional, and unjustified

interference with CES's existing and prospective contracts and business opportunities.  Plaintiffs

were aware of these existing and prospective contracts and business opportunities.  As a

consequence of Plaintiffs' actions, CES has suffered damages by losing the Comcast contract and

opportunities.

## II.    Motion To Dismiss Standard

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure

12(b)(6) is to test the facial sufficiency of a complaint.  The rule permits dismissal of a complaint

that fails to state a claim upon which relief can be granted.  It should be read alongside Federal

Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing

that the pleader is entitled to relief."  Although a complaint challenged by a Rule 12(b)(6) motion

to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the

"grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of

action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all

well-pleaded allegations are true and view the pleadings in the light most favorable to the

plaintiff.  *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, once a court "identifies pleadings that, because they are no more than conclusions, are

not entitled to the assumption of truth," it must determine whether the well-pled facts "state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A

complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555.  However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## III.    Discussion

### A. Tortious Interference Claim

Plaintiffs and RRC assert that a cause of action for tortious interference cannot be maintained against them because the facts pled by CES establish that CES cannot meet the third element of a tortious interference claim.  In order to establish a claim for tortious interference, CES must establish: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *University of West Florida Board of Trustees v. Habegger*, 125 So. 3d 323, 326 (Fla. 1st DCA 2013).  Plaintiffs and RRC contend that, in order to meet the "unjustified" aspect of the third element, a person must be a stranger to the business relationship.  Plaintiffs and RRC argue that it is clear from the face of the counterclaim that they are not strangers to the relationship between CES and Comcast because Plaintiffs and RRC had a financial interest in the continuation of that relationship.  Plaintiffs and RRC maintain that the compensation they received from CES came from Comcast and thus they

were not strangers to the contract between CES and Comcast.[1]

Plaintiffs and RRC rely on a single case to make their argument, *Palm Beach County Health Care District v. Professional Medical Education, Inc.*, 13 So. 3d 1090 (Fla. 4th DCA 2009). That case, however, is distinguishable. In that case Professional Medical Education, Inc. had a contract to provide services to the City of Greenacres. While not a party to that contract, Palm Beach County Health Care District was the source of the funds paying for the services performed by Professional Medical Education, Inc. The court held that as the source of funds for payment, Palm Beach County Health Care District was an interested third-party to the contract. *Id.* at 1094-95. The *Palm Beach* court noted that a "defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." *Id.* at 1094. The *Palm Beach* court cited to the Restatement (Second) of Torts § 769 (1979) to explain what financial interests make a person an interested third-party to a contract. Comment c of this section of the Restatement states:

> The financial interest in another's business requisite for the rule stated in this Section is an interest in the nature of an investment. A part owner of the business, as for example, a partner or stockholder, has at least an interest of this nature. A bondholder or other creditor may also have it. On the other hand, the interest of a person who looks to a third person for business and will lose business opportunities if that person enters into the business relations involved is not a financial interest under the rule stated in this Section.

Restatement (Second) of Tort § 769 (1979) cmt. c. Under this definition and based on the allegations in the counterclaim and third-party complaint, Plaintiffs and RRC would not be

---

[1] Taking this argument to its logical extreme would mean that any creditor of CES could also claim it was an interested party to the Comcast contract because payment from Comcast to CES would provide CES with funds that could be used to pay the creditor. Clearly, this is not a reasonable conclusion.

considered interested third-parties to the contract or business relationship between CES and Comcast. As pled, Plaintiffs' and RRC's interests are not akin to those of an owner, partner, or stockholder. As independent contractors, as pled in the counterclaim, Plaintiffs and RRC are akin to people who will lose business opportunities. Thus, Plaintiffs and RRC are strangers to the contract or business relationship between CES and Comcast. Moreover, the counterclaim does not contain any allegations that Plaintiffs or RRC have a financial interest in the contract between CES and Comcast and, contrary to Plaintiffs' and RRC's implications, the Court must draw all reasonable inferences in favor of CES, not Plaintiffs, at this stage of the proceedings. Thus, the Motion to Dismiss is denied. However, Plaintiffs and RRC are free to allege facts to support their claims of justification/privilege/financial interest as an affirmative defense.

### B. Defamation Claim

In its response to the Plaintiffs' Motion to Dismiss, CES asserts that it has also alleged a claim for business defamation, which is not addressed in Plaintiffs' Motion to Dismiss. As a result, in its Motion to Dismiss, RRC also seeks to dismiss CES's defamation claim. The confusion over the existence of this claim arises from the fact that it is not clear from the face of the counterclaim and third-party complaint that CES pled multiple claims.[2] There are not separate numbered counts in the counterclaim and third-party complaint. Moreover, nothing on the face of the counterclaim and third-party complaint indicates that CES intended to plead a separate claim for defamation. In fact, the word "defamation" is never used in the counterclaim and third-party complaint. As a result, the counterclaim and third-party complaint must be amended to clarify exactly what claims are before the Court.

---

[2]It is also not clear if CES has pled a claim for tortious interference with a contract or tortious interference with a business relationship, or both.

RRC has moved to dismiss the defamation claim because it does not meet the requirements of Federal Rule of Civil Procedure 8.  In order to state a claim for defamation under Florida law, a party must allege: (1) publication; (2) falsity; (3) that the actor made the statements with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) that the statement is defamatory. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  CES's counterclaim and third-party complaint has not adequately alleged facts to support all of these elements.  At a minimum, CES has failed to plead any damages as a result of the alleged statements.  Further, the statements and the alleged publication are pled in the barest possible way.  While RRC argues that the statements pled are speculative and opinion and, thus, not actionable, such arguments amount to affirmative defenses not a failure to adequately plead a defamation claim.  However, as set forth above, the Motion to Dismiss the defamation claim must be granted because it is not clear from the face of the pleading that CES has even pled such a claim.  If CES intends to plead a separate claim for defamation it must set out the substance of each allegedly defamatory statement on which it is proceeding; the date, place, and manner of publication; to whom each statement was made; and facts showing the damages flowing from each statement.

Accordingly, it is

ORDERED that

1.  Plaintiffs Robert Bezeau and Rudiana Carcani's Motion to Dismiss Counterclaim [DE-35] is GRANTED in part and DENIED in part:

    a.  The Motion to Dismiss based on Plaintiffs' theory that they are interested

parties in the contract or relationship is DENIED.

       b.  The Motion to Dismiss is GRANTED to the extent that the counterclaim fails to adequately set forth the claims pled.

     2.  Relentless Recovery Corporation's Motion to Dismiss Third-Party Claim [DE-51] is GRANTED in part and DENIED in part:

       a.  The Motion to Dismiss based on RRC's theory that it is an interested party in the contract or relationship is DENIED.

       b.  The Motion to Dismiss the defamation claim is GRANTED.

     3.  CES shall file an amended counterclaim in accordance with this Order by **June 10, 2015.**

     **DONE AND ORDERED** in Miami, Florida, this _27_ day of May, 2015.

                                 PATRICIA A. SEITZ
                             UNITED STATES DISTRICT JUDGE

cc:    All counsel of record